# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUSANNE TURNIPSEED, individually, | No. 56551-0-II |
| Appellant, | |
| v. | |
| DAYTON CAMPBELL HARRIS and JANE DOE HARRIS, individually, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P.J. – Susan Turnipseed appeals the trial court's evidentiary rulings and the trial court's order denying her CR 59 motion for reconsideration and her motion for an extension of time for consideration of the CR 59 motion.

Turnipseed and Dayton Campbell Harris were involved in a car accident. Turnipseed sued Campbell Harris for damages, and at trial she alleged that the accident caused an injury to her left vertebral artery and brain stem. The jury returned a special verdict finding that the accident with Campbell Harris did not cause Turnipseed's claimed injuries, and the trial court entered judgment on the verdict in favor of Campbell Harris.

We hold that (1) the trial court did not abuse its discretion in precluding Turnipseed's biomechanical expert from testifying about whether she suffered an injury to her vertebral artery or brain stem in the accident, (2) the trial court did not abuse its discretion when it denied

Turnipseed's motion to strike the defense medical expert's testimony, (3) the trial court committed harmless error when it excluded a late-disclosed witness without considering the *Burnet*[1] factors because his testimony would have been cumulative of other evidence, and (4) the trial court did not abuse its discretion when it denied Turnipseed's CR 59 motion for reconsideration and motion for an extension of time.

Accordingly, we affirm the trial court's judgment on the jury verdict dismissing Turnipseed's claims against Campbell Harris.

FACTS

In 2012, Turnipseed was involved in a car accident in Tacoma in which she was rear ended by Campbell Harris. Turnipseed was involved another car accident in 2013.

In September 2015, Turnipseed sued Campbell Harris, alleging that Campbell Harris's negligence caused her special and general damages.

*Late Disclosure of Fact Witness*

Before trial, Campbell Harris filed a motion in limine to exclude Russell Wyman as a trial witness because he was disclosed long after the deadlines for disclosure of fact witnesses and rebuttal witnesses. The trial court granted Campbell Harris's motion and excluded Wyman from testifying because he was not disclosed in a timely manner. But the court did not consider the *Burnet* factors in making this ruling. The court left open the possibility that Wyman could testify as a rebuttal witness to rebut evidence in Campbell Harris's case.

As an offer of proof, Turnipseed explained that Wyman would testify that he observed the stereo coming out of the dashboard of Turnipseed's vehicle after the accident.

---

[1] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494-97, 933 P.2d 1036 (1997).

*Jury Trial*

At trial, Turnipseed described the 2012 car accident. She stated that she was in her car stopped at a traffic signal. She testified that Campbell Harris hit the back of her car, and that she experienced pain in her neck and on the side of her face and had a headache after the accident. Turnipseed stated that her car was a total loss as a result of the accident. She also testified that she discovered that the panel stereo had popped off during the accident.

Turnipseed called Michael Chan, D.C., a chiropractor and accident reconstructionist with training in injury biomechanics for spinal and brain injuries. Dr. Chan testified about his expertise in biomechanics and he agreed to provide opinions based on "a reasonable degree of biomechanical certainty." Report of Proceedings (RP) at 143. He stated that his qualifications as a chiropractor enabled him to review the medical records associated with the case to assist in his biomechanical analysis. However, Dr. Chan did not discuss whether as a chiropractor he was qualified to diagnose injuries to the vertebral artery or brain stem. And he acknowledged that he was not qualified to treat vascular injuries or brain stem injuries, and that he had never seen a vascular injury in his practice.

Turnipseed asked Dr. Chan his opinions as a biomechanical expert regarding the forces she experienced in the accident and Dr. Chan provided a detailed analysis of those forces. He concluded by expressing his opinion that the accident created a mechanism of injury for damage to the vertebral artery and compression of the brain stem.

Turnipseed then asked, "So with regard to mechanism – and you say that you have reviewed records. What is your opinion as to whether or not Ms. Turnipseed sustained injury to her neck and particularly her brainstem and left vertebral artery?" RP at 168-69. Campbell Harris objected on the basis that Dr. Chan could not testify as to whether or not Turnipseed did

or did not sustain an injury because he was not a medical doctor. The trial court sustained the objection, stating that Dr. Chan could "speak to the biomechanics." RP at 169.

Turnipseed also called Dr. Alan Langman, an otolaryngologist specializing in the treatment of ear disease. He testified that Turnipseed suffered a central vestibular injury that was entirely caused by the forces from the 2012 accident. And Turnipseed presented the video deposition of Dr. Rosabel Young, a neurologist. She testified that the 2012 accident caused a compression of Turnipseed's brain stem.

Campbell Harris admitted liability, but argued that the 2012 accident did not cause any vertebral artery or brain stem injury.

Campbell Harris called Dr. Mary Reif, a neurologist. She testified that Turnipseed did not exhibit the signs and symptoms that one would expect to see from someone who experienced a concussion or traumatic brain injury. Dr. Reif explained that some of Turnipseed's symptoms after the 2012 accident could have been caused by things other than the accident. And she testified that in her 40-year career she had never seen injuries to the vertebral artery caused by a whiplash injury, and that such a causation was not recognized in medicine. She also testified that she disagreed with the opinions of Dr. Young. Finally, Dr. Reif stated that she did not believe that Turnipseed's current problems related to the 2012 accident.

At no point during Dr. Reif's direct examination did Turnipseed object. Turnipseed conducted a cross examination of Dr. Reif. Dr. Reif was excused and the defense rested its case.

At that point, Turnipseed moved to strike Dr. Reif's testimony. Turnipseed argued that Dr. Reif gave no opinions based on more probably than not or a reasonable degree of medical certainty. The trial court denied the motion. The court stated, "She testified, you know, with some certainty. The answer was a definitive 'no' and a definitive 'yes.' In other words, were

4

these complaints associated with the accident. I think one can conclude a definitive 'no' is more than a probable than not basis that it is possible." RP at 651.

*Jury Verdict and Motion for Reconsideration*

The jury found by special verdict that the 2012 car accident did not proximately cause the injury to Turnipseed's left vertebral artery and brain stem. The trial court entered a judgment on the jury verdict, dismissing Turnipseed's claims against Campbell Harris with prejudice.

Turnipseed subsequently dismissed her attorney from the case, expressing concern for his health. The attorney then filed a notice of withdrawal from the case.

Turnipseed, representing herself, filed a motion for reconsideration. She cited CR 59(4), (5), and (9) in her motion. Turnipseed emphasized that she had suffered permanent injuries to her vertebral artery and brain stem and that she continued to experience serious symptoms years after the accident. She also argued that Campbell Harris had minimized her injuries during the trial and incorrectly had told the jury that she was not disabled. In addition, Turnipseed stated that Campbell Harris apologized to her immediately after the accident and explained that he had been texting, but that he recanted that confession during his 2021 deposition.

Ten days later, Turnipseed filed a motion titled "Motion to request extension of Reconsideration." She asked the court to extend her motion for reconsideration for four months to give her time to obtain legal representation. She provided no further explanation for her request.

The trial court entered an order denying Turnipseed's motion for extension of time for reconsideration and her motion for reconsideration.

Turnipseed appeals several of the trial court's evidentiary rulings and its order denying her motions for extension of time for reconsideration and for reconsideration.

ANALYSIS

A.  EVIDENTIARY CHALLENGES

We review a trial court's evidentiary rulings for an abuse of discretion. *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). We will overturn the trial court's ruling on the admissibility of evidence only if its decision was manifestly unreasonable, exercised on untenable grounds, or based on untenable reasons. *Id.*

If the trial court made an evidentiary error, reversal is required only if the error materially affected the outcome of the trial. *Id.*

1.  Sustaining Objection to Dr. Chan's Testimony

Turnipseed argues that the trial court abused its discretion when it prevented Dr. Chan from testifying that the 2012 accident caused an injury to her vertebral artery and brain stem. We disagree.

Biomechanical experts may be allowed to render opinions regarding the forces involved in car accidents. *See Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 355-56, 333 P.3d 388 (2014). However, trial courts or the experts themselves have recognized that biomechanical experts are not qualified to give opinions regarding whether the accident actually caused a specific injury to the plaintiff. *See L.M. by and through Dussault v. Hamilton*, 193 Wn.2d 113, 127, 436 P.3d 803 (2019) (trial court barred a biomechanical expert from testifying regarding specific causation in the plaintiff's case); *Johnston-Forbes*, 181 Wn.2d at 354-55 (counsel assured the trial court that the biomechanical expert would not testify about the plaintiff's specific injuries, and the expert repeatedly confirmed that fact); *Stedman v. Cooper*, 172 Wn. App. 9, 20, 292 P.3d 764 (2012) (biomechanical expert disavowed any intention to give an opinion regarding whether the plaintiff was hurt in the accident); *Ma'ele v. Arrington*, 111 Wn.

App. 557, 564, 45 P.3d 557 (2002) (noting that the biomechanical expert did not testify about the plaintiff's symptoms or possible diagnosis).

Here, it is clear that Dr. Chan's expertise in biomechanics did not qualify him to testify whether the 2012 accident caused an injury to Turnipseed's vertebral artery and brain stem. This case is somewhat atypical in that Dr. Chan also was a chiropractor. However, he did not testify that his chiropractic training qualified him to diagnose injuries to the vertebral artery or brain stem. In fact, he admitted that he was not qualified to treat vascular injuries or brain stem injuries and that he had never seen a vascular injury in his practice.

We hold that the trial court did not abuse its discretion in excluding Dr. Chan's testimony about Turnipseed's specific injuries.

2. Denial of Motion to Strike Dr. Reif Testimony

Turnipseed argues that the trial court erred when it denied her motion to strike Dr. Reif's testimony because Dr. Reif failed to testify based on a reasonable degree of medical certainty. We disagree.

a. Legal Principles

ER 702 provides that a court may permit a witness qualified as an expert to provide an opinion regarding scientific or specialized knowledge if such testimony may assist the trier of fact. "Admission is proper provided the expert is qualified and his or her testimony is helpful." *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016). The expert's opinion must be grounded on facts and cannot be conclusory or based on an assumption. *Id*. Expert medical testimony must be based on reasonable medical certainty or reasonable medical probability. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 606-07, 260 P.3d 857 (2011); *see also*

*Desranleau v. Hyland's, Inc.*, 26 Wn. App. 2d 418, 438, 527 P.3d 1160, *review denied,* 1 Wn.3d 1030 (2023).

However, an expert is not necessarily required to expressly state the words "reasonable medical certainty" or "reasonable medical probability." *See White v. Kent Med. Ctr., Inc., PS*, 61 Wn. App. 163, 172, 810 P.2d 4 (1991) (in the context of standard of care testimony, "[t]o require experts to testify in a particular format would elevate form over substance"). "We look instead to . . . the substance of what the experts bring to the discussion." *Leaverton v. Cascade Surgical Partners, PLLC*, 160 Wn. App. 512, 520, 248 P.3d 136 (2011).

"[T]rial courts are afforded wide discretion and trial court expert opinion decisions will not be disturbed on appeal absent an abuse of such discretion." *Johnston-Forbes*, 181 Wn.2d at 352. An abuse of discretion occurs when the trial court's ruling is "unsupported by the record or result[s] from applying the wrong legal standard." *Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018).

b.    Analysis

We conclude that the trial court did not abuse its discretion in denying Turnipseed's motion to strike Dr. Reif's testimony for three reasons.

First, Turnipseed did not object during Dr. Reif's testimony. The general rule is that a failure to object waives an evidentiary challenge. *See Orris v. Lingley*, 172 Wn. App. 61, 67, 288 P.3d 1159 (2012). To the extent that a motion to strike at the end of an expert's testimony is sufficient, Turnipseed's motion to strike Dr. Reif's entire testimony was overbroad. Certainly, the entirety of Dr. Reif's testimony was not inadmissible. For example, she provided general background information about the expected symptoms for a concussion that clearly was based on her extensive experience and expertise. Turnipseed failed to identify which portions of the

8

testimony should be stricken. The trial court did not abuse its discretion in failing to strike Dr.

Reif's *entire* testimony.

Second, Dr. Reif was a defense expert, not a plaintiff's expert. Because defendants

generally have no burden of proof, their experts do not necessarily have to testify based on

reasonable medical certainty. A commentator states,

> The requirement of reasonable medical certainty does not apply to experts for the defense. The purpose of medical opinions by defense experts is to offer alternative explanations for the plaintiff's medical condition. As stated in a 2013 case, the opinions of defense experts are relevant so long as they "tend to deprive plaintiff's proof of the persuasive power necessary to cross the 50 percent threshold."

5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 702.32 at 127

(6th ed. 2016) (quoting *Colley v. Peacehealth*, 177 Wn. App. 717, 732, 312 P.3d 989 (2013)).

Third, although Dr. Reif did not use the words "reasonable medical certainty," the

substance of her testimony shows that she actually met that standard. Dr. Reif outlined her

extensive experience and expertise. She reviewed Turnipseed's medical records as well as

deposition and trial testimony from Turnipseed's doctors and experts. To the extent she

provided opinions regarding Turnipseed's condition, she gave unequivocal testimony that clearly

was based on her expertise. We conclude that the court did not abuse its discretion in

determining that Dr. Reif's definitive answers amounted to a sufficient degree of medical

certainty.[2]

We hold that the trial court did not abuse its discretion when it denied Turnipseed's

motion to strike Dr. Reif's entire testimony.

---

[2] We recognize that the better course of action for defense counsel in the abundance of caution would have been to obtain Dr. Reif's agreement at the beginning of her testimony that all opinions would be given based on reasonable medical certainty or probability.

3.    Exclusion of Wyman as Trial Witness

Turnipseed argues that the trial court erred when it ruled that Wyman could not testify because it failed to conduct the *Burnet* analysis required for the exclusion of late-disclosed witnesses.  Campbell Harris concedes that the trial court erred by failing to conduct the *Burnet* analysis but argues that the error was harmless.  We agree with Campbell Harris.

a.    Legal Principles

Before excluding untimely evidence, the trial court must consider the factors set forth in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494-97, 933 P.2d 1036 (1997).  *Keck v. Collins*, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015).  The *Burnet* factors include: (1) whether the violation was willful or deliberate, (2) whether the violation substantially prejudiced the opposing party's ability to prepare for trial, and (3) whether lesser sanctions probably would suffice.  *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (citing *Burnet*, 131 Wn.2d at 494).  The trial court must make express findings regarding the *Burnet* factors on the record.  *Teter v. Deck*, 174 Wn.2d 207, 217, 274 P.3d 336 (2012).

The exclusion of evidence without considering the *Burnet* factors is harmless if that evidence is cumulative.  *Jones*, 179 Wn.2d at 360.  " 'The evidence need not be identical to that which is admitted; instead, harmless error . . . results where evidence is excluded which is, in substance, the same as other evidence which is admitted.' "  *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 731, 315 P.3d 1143 (quoting *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 170, 876 P.2d 435 (1994)).

b.    Analysis

The trial court erred because it did not consider the *Burnet* factors on the record before excluding Wyman as a trial witness.  The question is whether that error was harmless.

Turnipseed stated that Wyman would testify that he observed her stereo coming out of the front dashboard of her vehicle. But Turnipseed herself testified that she observed her stereo coming off of her front dashboard. Therefore, Wyman's testimony would have been cumulative of her testimony on that issue.

Turnipseed argues that Wyman's testimony would have demonstrated the force of the impact from the accident. But Turnipseed testified about the force of the accident when she testified that her car was a total loss. And Dr. Chan testified extensively about the forces involved in the accident and related those forces to the mechanism of Turnipseed's injury. So again, this testimony was cumulative.

Accordingly, we hold that the trial court's error in excluding Wyman as a witness without considering the *Burnet* factors was harmless.

## C. DENIAL OF MOTION FOR RECONSIDERATION/MOTION FOR EXTENSION

Turnipseed argues that the trial court erred when it denied her CR 59 motion for reconsideration and her motion for an extension of time so she could obtain legal representation. We disagree.

### 1. Legal Principles

CR 59(a) sets forth several potential reasons for granting a motion for reconsideration:

(4) Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial;
(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;
. . . .

(9) That substantial justice has not been done.

11

We review a trial court's order denying a motion for reconsideration for abuse of discretion. *Wilkem v. City of Camas*, 31 Wn. App. 2d 575, 593, 551 P.3d 1067 (2024), *review denied,* 4 Wn.3d 1002 (2025).

We also review a trial court's denial of a continuance motion for an abuse of discretion. *Wood v. Milionis Constr., Inc.*, 198 Wn.2d 105, 133, 492 P.3d 813 (2021). An abuse of discretion occurs for the denial of a continuance only if the trial court's decision is manifestly unreasonable or based on untenable grounds. *K.M.P. by & through Pinho v. Big Brother Big Sisters of Puget Sound*, 16 Wn. App. 2d 475, 484, 483 P.3d 119 (2021).

2. Analysis

In her CR 59 motion for reconsideration, Turnipseed cited CR 59(a)(4), (5), and (9) and requested a new trial. Turnipseed argued that the jury's verdict, which resulted in zero damages for her, was inadequate given her injuries. But the damages from the jury verdict stemmed from the jury's underlying finding that the 2012 accident was not the proximate cause of Turnipseed's injuries. Turnipseed also referenced the fact that Campbell Harris apologized and admitted to texting while driving before the car accident, but later recanted. But the trial was not about establishing fault – Campbell Harris admitted fault. The trial was about determining whether the 2012 accident caused Turnipseed's claimed injuries. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for reconsideration.

Regarding her motion for an extension, Turnipseed argues that she recognized that she was not cognitively capable of pursuing the motion for reconsideration herself. She emphasizes that she filed the motion for an extension because she needed time to obtain counsel to represent her, which was especially important given her cognitive deficits and disabilities. She briefly characterizes this as a need for accommodation for her disabilities.

12

However, Turnipseed did not make that argument in the trial court. Nor is there any indication in this record that she sought accommodation from the trial court under GR 33. She simply asked for more time so she could obtain representation without further explanation. But the court in its discretion determined that there was no basis for reconsideration regardless of whether Turnipseed had counsel. We hold that the trial court did not abuse its discretion in denying Turnipseed's motion for an extension.

## CONCLUSION

We affirm the trial court's judgment on the jury verdict dismissing Turnipseed's claims against Campbell Harris.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.


We concur:

_____
GLASGOW, J.

_____
CHE, J.